**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**

**CASE NO.**

CHELSEA BINNIE,
Plaintiff,

vs.

LOUIS DeJOY, as Postmaster General of the United States, United States Postal Service,
Defendant.
_______________________________/

**COMPLAINT**

Plaintiff, Chelsea Binnie, through her undersigned counsel, hereby files this Complaint, against the Defendant, Louis DeJoy, as Postmaster General of the United States, United States Postal Service; and in support hereof, Plaintiff states as follows:

## I. INTRODUCTION

1. Plaintiff maintains that as a result of sustaining an on-the-job injury, on or about July 14, 2019, her medical status substantially changed, to that of a "qualified individual with a disability," under the Rehabilitation Act of 1973, 29 U.S.C. Section 794, *et seq*,; and she further claims that, as a result of this substantial change in her work/medical status, she was subjected to continuous on going discrimination and intimidation in the workplace, and further, she also maintains that management subjected her to an unlawful and continuing course of unlawful and discriminatory ,conduct in the workplace, based on a perception of disability, exhibited toward her, by Defendant's management and or supervisory employees.

## I.
## JURISDICTION

2. This action is brought pursuant to the Rehabilitation Act of 1973, Rehabilitation Act of 1973, 29 U.S.C. Section 794, *et seq*,

3. This action is also brought pursuant to the anti-retaliation provision, of the Rehabilitation Act of 1973, which incorporates by reference, the anti-retaliation provision as contained, in the Americans with Disabilities Act of 1990, and the amendments thereto.

4. Plaintiff further contends that constant and repeated predicate acts of discrimination, based on her disabilities, resulted in the creation of a hostile and or an offensive work environment, based on her disability, in violation of the Rehabilitation Act of 1973, 29 U.S.C. Section 794, *et seq*,

5. On or about December 12, 2019, the Plaintiff made her initial contact with an EEO Counselor.

6. On or about March 14, 2020, Plaintiff filed a formal complaint of employment discrimination, or an Equal Employment Opportunity ("EEO") Complaint, with the United States Postal Service, alleging claims of race, color, gender and disability discrimination, as well as retaliation.

7. The Plaintiff maintains that the Defendant engaged in a continuing pattern and practice of harassment, and or adverse actions, under a continuing violation theory, beginning on or about July 14, 2019, initially resulting from her on the job injury; and continuing through June 9, 2020.

8. Although the Plaintiff began her participation in the EEO administrative process, by requesting an administrative hearing, she has subsequently requested that the Equal Employment Opportunity Commission ("EEOC," or the Commission), cease processing her administrative complaint, on February 11, 2022, and since over one hundred eighty (180) days have now elapsed since the filing of the formal complaint of discrimination, Plaintiff has exhausted the required administrative procedures and she is authorized to file this Complaint in federal district court.

9. In short, the Plaintiff has complied with all pertinent administrative prerequisites, which are necessary to file a formal lawsuit, in federal district court, pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Section 2000(e), in that she had filed an appropriate charge of discrimination, within the applicable time frames; and hence, she has exhausted all pertinent administrative procedures; and she has performed all conditions precedent, prior to the filing of suit in federal district court.

## II.
## PARTIES

10. At all material times herein, Plaintiff, Chelsea Binnie (hereinafter, referred to as, "BINNIE"), is a Caucasian female, of non-Hispanic origin, she was and continues to be, a resident of West Melbourne, Brevard County, Florida; and she was employed by the Defendant as, a non-career Rural Carrier Associate, at the Postal Facility, located in Palm Bay West, Palm Bay, Brevard County, Florida.

11. Defendant, Louis DeJoy, is the Agency Head of the United States Postal Service (hereinafter, referred to as, the "AGENCY"), and he is responsible for administering the personnel and human resources policies of the Agency, as well as monitoring legal compliance policies; as well as the actions of managers, supervisors and other employees, employed by the Agency, the United States Postal Service.

12. Defendant, Louis DeJoy, is the Agency Head of the United States Postal Service, and the Agency is an, "employer," within the meaning of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Section 2000(e), *et seq*., and the Agency is subject to the prohibitions; and the affirmative legal obligations mandated by this statute.

13. Defendant, Louis DeJoy, is the Agency Head of the United States Postal Service, and the Agency is an, "employer," within the meaning of the Rehabilitation Act of 1973, 29 U.S.C. Section 794, and the Agency is subject to the prohibitions; and the affirmative legal obligations mandated by this statute.

14. The Rehabilitation Act of 1973, incorporates the standards for retaliation, as set forth by the Americans with Disabilities Act of 1990, and the subsequent amendments thereto, *see*, 42 U.S.C. Section 12203.

## III.
## FACTS

15. On or about July 14, 2019, BINNIE sustained an on-the-job injury, she had tripped and fell, causing her knee to bleed, and following the fall, Plaintiff had difficulty walking; however, her immediate supervisor, Irina Arsenyeva (hereinafter, referred to as,

"ARSENYEVA"), initially refused to file the applicable CA-1 proof of injury form, stating that the "claim would not be approved;" and that Plaintiff would be just wasting her time."

16. BINNIE sustained a severe thoracic injury, as a result of the on-the-job injury, the injury to the L4—L5, and L5—Si levels of the thoracic spine is permanent, with nerve damage, in that this condition, clearly impairs her major life activities.

17. On or about July 14, 2019, BINNIE further reported that because she had fallen at work, she needed to report to urgent care, since she believed that her back had also been injured.

18. Plaintiff's proof of claim form, was filed on or about July 16, 2019, with the assistance of her union representative, due to management's failure and or refusal, to provide the appropriate assistance.

19. Moreover, on or about September 11, 2019, September 12, 2019 and September 17, 2019, Supervisors Simone Lewis (hereinafter, referred to as, LEWIS")[1] and Michael Duddie (hereinafter, referred to as, "DUDDIE"), made offensive derogatory comments about the Plaintiff's injuries and or her physical condition; specifically, LEWIS referenced another employee who could barely walk because of an on-the-job injury, but this other employee was still attending to her route.

20. DUDDIE criticized the Plaintiff for being designated as a "limited duty" employee, on September 17, 2019, he further stated that management was going to insist a rapid turn around to full duty status; he also responded in a hostile manner, when the Plaintiff

---

[1] LEWIS was serving in an acting capacity as a 204B Supervisor from April, 2019, through January, 2020.

provided him with specific results of diagnostic testing, claiming that he responded by stating, "are you f---ing serious?"

21. As of October 23, 2019, the Plaintiff stated that her modified duty assignment required that she be responsible for lifting packages not to exceed fifteen pounds, and driving no more than five-and-one-half hours, were incorrect, based on her statement of injury, the applicable limitations, consistent with the Plaintiff's CA-17 form, should have indicated an occasional lifting of fifteen pounds and no more than two hours of driving per day.

22. Management began to repeatedly compel the Plaintiff to perform job duties, which were inconsistent with the information on her CA-17 Form, and in addition, DUDDIE criticized her on October 24, 2019, stating that she was giving him "too much trouble" on the modified job duties, and he repeatedly compared her medical condition to other employees.

23. Plaintiff further contended that DUDDIE threatened not to pay her, if she did not sign the erroneous modified job assignment form; she further contends that this action by DUDDIE, exhibited further evidence of intentional disability discrimination.

24. Beginning on or about October 26, 2019, Supervisors ARSENYEVA and DUDDIE, refused to provide the Plaintiff with regular weekly job assignments, although they compelled her to report for work every day.

25. However, she would be frequently sent home, since the supervisors contended that there was no work, which would comply with Plaintiff's modified job duties; they further claimed that the limited duty work made employees, "too comfortable," and the supervisors refused to send e-mails to neighboring offices, to determine if suitable work was available.

26. On November 1, 2019 and on February 7, 2020, Plaintiff was refused work, when applicable work was indeed available; she was told to "go home," and in addition, supervisory personnel told her, "To go home," on December 12, 2019, after she requested information on the filing of an Equal Employment Opportunity ("EEO") complaint.

27. In addition, on November 1, 2019, the Plaintiff made a request for a reasonable accommodation to DUDDIE, based upon her then work restrictions, but there was no substantive response to this request by management.

28. Beginning on November 4, 2019 and continuing, Plaintiff was repeatedly asked by Supervisors ARSENYVA and DUDDIE to violate her applicable work restrictions, by driving more than two hours per day, engaging in push and pull duties, in violation of her work restrictions, which also included casing mail and retrieving mail from tubs and hampers; management provided no reasons and or justifications, for compelling the Plaintiff to work outside of her approved work restrictions; and certainly, Plaintiff maintains that there directives exacerbated her injuries.

29. Plaintiff maintains that the repeated violations of her work restrictions by management was part of an orchestrated campaign to force her out of her job, in that on or about November 19, 2019, ARSENYVA strongly encouraged Plaintiff to quit her position with the Postal Service, and that these comments by management represented further intimidation, based upon her disability.

30. On or about December 12, 2019, ARSENYVA became very hostile and argumentative toward the Plaintiff, since she objected that certain assigned duties, such as parcel delivery,

would aggravate her back injury; ARSENYVA proceeded to tell the Plaintiff, "to go home," because she needed to deliver parcels to the apartments on her route, and consequently, management maintained that there was no other work available.

31. ARSENYVA also became visibly upset on or about December 12, 2019, after the Plaintiff requested information on the filing of an EEO Complaint; before she was sent home, the Plaintiff informed ARSENYVA that the assigned work was causing her to experience pain, she also had asked ARSENYVA to stop her argumentative and continuing her offensive behavior, but ARSENYVA refused.

32. On or about February 7, 2020, ten minutes prior to her scheduled start for work, Plaintiff was contacted by ARSENYVA; and Plaintiff was told to return home, because there was no work allegedly available for her.

33. On or about February 11, 2020, the Plaintiff notified Supervisors ARSENYVA and DUDDIE, that a former supervisor at the Palm Bay West Station, Alex Arteaga (hereinafter, "ARTEAGA") was returning as the Acting Manager; and although she was concerned that ARTEAGA was going to subject her to improper adverse actions, as a non-career rural carrier, in that ARTEAGA was preparing a "hit list, to impact no-career rural carriers, no investigation was undertaken, regarding the Plaintiff's allegations pertaining to Arteaga.

34. On or about April 18, 2020, was given instructions by Supervisor Tekia Evans ("EVANS") and ARTEAGA, which violated her work restrictions; for pushing and pulling, lifting

restrictions and hours worked per day, in that the delivery schedule also clearly violated Plaintiff's pertinent standing limitations.

35. On or about April 18, 2020, Supervisor EVANS sent the Pliantiff work related text messages, while Plaintiff was off the clock.

36. On or about April 22, 2020, June 8, 2020 and June 9, 2020, the Plaintiff informed Supervisors ARTEAGA and ARSENYVA, that a co-worker, Joan Ortiz (hereinafter, referred to as, "ORTIZ") denigrated her work performance, she stated that Plaintiff "does not belong" working for the Postal Service; and further ORTIZ dissuades other employees from interacting with the Plaintiff; however, management has failed to undertake any remedial measures to address these allegations of harassment, perpetrated by ORTIZ.

37. The repeated acts of supervisory personnel, whereby BINNIE was disparaged and denigrated based on her disability, the fact that management expressed open hostility toward BINNIE as a disabled employee, the fact that management repeatedly violated her approved work restrictions, the fact that the Plaintiff was sent home without work assignments, which were available to accommodate her work restrictions, the fact that supervisory personnel told the Plaintiff to resign, resulted in the Plaintiff having difficulty in performing her appointed job functions, when she was given work to perform and these predicate adverse acts, in the workplace, resulted in the creation of a hostile and or an offensive work environment.

38. The creation of the hostile or offensive work environment had its genesis in the Plaintiff's injury in the workplace, stemming from the on-the-job injury, management perceived the

Plaintiff, as basically, damaged goods, and as a result, supervisory personnel embarked on a continuous and repeated campaign of workplace intimidation and harassment directly against BINNIE.

39. Depiete Plaintiff's internal claims of employment discrimination in the workplace, against supervisory personnel, the Defendant took no responsive remedial measures to end the repeated and on-going harassment.

40. Separate and apart from the formal EEO process, the Defendant apparently has no operational and or internal procedure, subject to regular employee use, to deal with employee internal complaints of employment discrimination.

**COUNT I**
**(DISABILITY DISCRIMINATION-VIOLATION OF THE REHABILITATION ACT)**

41. Plaintiff restates and re-avers the allegations contained in Paragraphs 1—40 of the Complaint, as if fully set forth herein.

42. Plaintiff is a "qualified individual with a disability," under the Rehabilitation Act of 1973, 29 U.S.C. Section 794, *et seq.,* since she sustained a substantial injury, with associated and related nerve damage, to her thoracic spine, as result of the on-the-job injury, and furthermore, the injury is permanent, thereby impairing one or more of her major life activities.

43. Plaintiff was discriminated against by the Defendant, on the basis of being a "qualified individual with a disability," under the Rehabilitation Act of 1973, 29 U.S.C. Section 794,

*et seq.*, and further, the Defendant employer also "perceived" her as being disabled, further violating the statutory requirements of the Rehabilitation Act of 1973.

44. Plaintiff requested reasonable accommodations from the Defendant employer, however, she was unlawfully denied those accommodations.

45. Plaintiff could perform the essential functions of her position, with the Defendant, with access to the requested reasonable accommodations.

46. Plaintiff could also perform the functions of her position, pursuant to a modified duty offer, which was based on a report of injury.

47. However, due to the failure and or the refusal of the Defendant to grant the requested reasonable accommodations, the Plaintiff was displaced from her position, with the Defendant, and on numerous occasions, she was sent home, without being provided with any work, within her stated work restrictions.

48. As a direct and proximate result of the Plaintiff's internal complaint of disability discrimination, the Plaintiff denied the accommodation; and she lost the opportunity to continue regular employment with the Defendant.

49. As a direct and proximate result of the Defendant's unlawful acts, BINNIE has suffered great and irreparable economic harm and other associated losses.

50. Moreover, as a further result of the Defendant's unlawful disability-based conduct, the Plaintiff has been compelled to retain undersigned counsel, and she has incurred fees and costs.

**WHEREFORE**, the Plaintiff, CHELSEA BINNIE, respectfully requests that this Court enter judgment against the Defendant, LOUIS DeJOY, as Postmaster General of the United States, United States Postal Service and find that the Defendant indeed violated the Rehabilitation Act of 1973, 29 U.S.C. Section 794, *et seq.,* and order the following additional relief:

A) Award the Plaintiff actual damages, including appropriate amounts of back-pay and front pay, as well as compensatory damages;

B) Award the Plaintiff her costs and a reasonable attorney's fee;

C) Enjoin the Defendant from continuing its discriminatory practices; and

D) Grant any and all appropriate relief, which the Court deems to be just and proper.

**COUNT II**
**(RETALIATION-VIOLATION OF THE REHABILITATIOIN ACT)**

51. Plaintiff restates and re-avers the allegations contained in Paragraphs 1—40 of the Complaint, as if fully set forth herein.

52. Plaintiff is a "qualified individual with a disability," under the Rehabilitation Act of 1973, 29 U.S.C. Section 794, *et seq.*

53. Plaintiff requested reasonable accommodations from the Defendant employer, however, she was unlawfully denied those accommodations.

54. Plaintiff could perform the essential functions of her position, with the Defendant, with access to the requested reasonable accommodations.

55. Plaintiff could also perform the functions of her position, pursuant to a modified duty offer, which was based on a report of injury.

56. However, due to the failure and or the refusal of the Defendant to grant the requested reasonable accommodations, the Plaintiff was displaced from her position with the Defendant.

57. Plaintiff had engaged in protected activity, prior to being displaced from her position, by requesting, and or complaining, about the lack of a reasonable accommodation; and as a result thereof, the Defendant retaliated against the Plaintiff, by subjecting her to predicate adverse actions, such as the violation of her work restrictions; failing to provide her with work, commensurate with her work restrictions, threatening her with termination, repeatedly disparaging her, based upon her disability, violation of the retaliation provision of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. Section 12203, which is incorporated into the Rehabilitation Act by reference and hence, by its unlawful retaliatory conduct, the Defendant violated the Rehabilitation Act of 1973.

58. As a direct and proximate result of the Defendant's unlawful acts, BINNIE has suffered great and irreparable economic harm and other associated losses.

59. Moreover, as a further result of the Defendant's unlawful disability-based conduct, the Plaintiff has been compelled to retain undersigned counsel and she has incurred fees and costs.

**WHEREFORE**, the Plaintiff, CHELSEA BINN IE, respectfully requests that this Court enter judgment against the Defendant, LOUIS DeJOY, as Postmaster General of the

United States, United States Postal Service and find that the Defendant indeed violated the Rehabilitation Act of 1973, 29 U.S.C. Section 794, *et seq.*, and order the following additional relief:

A) Award the Plaintiff actual damages, including appropriate amounts of back-pay and front pay, as well as compensatory damages;

B) Award the Plaintiff her costs and a reasonable attorney's fee;

C) Enjoin the Defendant from continuing its discriminatory practices; and

D) Grant any and all appropriate relief, which the Court deems to be just and proper.

**COUNT III**
**(VIOLATION OF THE REHABILITATION ACT, HOSTILE WORK ENVIRONMENT)**

60. Plaintiff restates and re-avers the allegations contained in Paragraphs 1—40 of the Complaint, as if fully set forth herein.

61. The Defendant subjected the Plaintiff to numerous regular and repeated acts of discrimination, including, constantly and repeatedly denigrating the Plaintiff, based on her disability, the expression of open hostility toward BINNIE, as a disabled and or injured employee by management, the constant and repeated violation of the Plaintiff's approved work restrictions, the fact that the Plaintiff was repeatedly and constantly sent home without work assignments, which were indeed readily available to accommodate her work restrictions, the fact that Plaintiff was told to report for work every day, and then, she was then repeatedly sent home without any work; the fact that supervisory personnel told the

Plaintiff to resign, and the fact that management threatened her with reprisal; it is abundantly clear that this taken together, all contributed to the existence and the establishment of a hostile and or offensive work environment by the Defendant, against the Plaintiff.

62. All of the predicate adverse acts of management as set forth in resulted in the Plaintiff having difficulty in performing her appointed job functions, when she was given work to perform; and these predicate discriminatory adverse acts, accomplished and or presented to the Plaintiff in the workplace, resulted in the creation of a hostile and or an offensive work environment.

63. The hostile and or offensive work environment was created by the regular, pervasive and continuous acts of the Defendant's authorized supervisory personnel, as set forth in Paragraphs 24—39 and Paragraph 57 of the Complaint, as stated above.

64. The work environment presented and created by the Defendant was both objectively and subjectively hostile to the Plaintiff, in the position of a reasonable worker.

65. As a direct and proximate result of the Defendant's unlawful acts, BINNIE has suffered great and irreparable economic harm and other associated losses.

66. Moreover, as a further result of the Defendant's unlawful race-based conduct, the Plaintiff has been compelled to retain undersigned counsel and she has incurred fees and costs.

**WHEREFORE**, the Plaintiff, CHELSEA BINNIE, respectfully requests that this Court enter judgment against the Defendant, LOUIS DeJOY, as Postmaster General of the United States, United States Postal Service and find that the Defendant indeed violated the

Rehabilitation Act of 1973, 29 U.S.C. Section 794, *et seq*., and order the following additional relief:

A) Award the Plaintiff actual damages, including appropriate amounts of back-pay and front pay, as well as compensatory damages;

B) Award the Plaintiff her costs and a reasonable attorney's fee;

C) Enjoin the Defendant from continuing its discriminatory practices; and

D) Grant any and all appropriate relief, which the Court deems to be just and proper.

**Demand for Trial by Jury**

Plaintiff demands trial by jury of all issues so triable.

Respectfully submitted,

Mark J. Berkowitz, P.A.
Attorney for Plaintiff
One Ten Tower
110 S.E. 6th Street
Suite 1700
Ft. Lauderdale, Florida 33301
(954) 527-0570 Telephone
(954) 281-5881 Telecopier
E-mail: labor@markjberkowitz.com
Fla. Bar No. 369391

/s/ Mark J. Berkowitz
Mark J. Berkowitz

Dated on this 9th day of February, 2022.